359 So.2d 957 (1978)
Earl J. RODDY and Etienne P. Millet
v.
NORCO LOCAL 4-750, OIL, CHEMICAL AND ATOMIC WORKERS INTERNATIONAL UNION.
No. 61178.
Supreme Court of Louisiana.
May 22, 1978.
Rehearing Denied July 3, 1978.[*]
*958 William D. O'Regan, III, LaPlace, for plaintiffs-applicants.
Dennis M. Angelico, Jackson & Hess, New Orleans, for defendant-respondent.
SUMMERS, Justice.
Plaintiffs Earl J. Roddy and Etienne P. Millet were employed as first class craftsmen by the Shell Oil Company, Norco Refinery, during 1962. On August 18, 1962 Independent Oil & Chemical Workers' Union of Louisiana (Independent) called a strike at the Shell Oil Refinery while plaintiffs Roddy and Millet were on vacation. When plaintiffs returned they learned that as non-union hourly workers they had the right to return to their jobs even though a strike existed at the refinery.
On the morning of October 15, 1962 plaintiffs endeavored to return to work and were met by pickets of Independent, who barred their entrance into the refinery grounds where they were employed. By reason thereof plaintiffs were unable to return to work until February 17, 1963. Plaintiffs therefore instituted suit against defendant in tort claiming as damages the loss of wages resulting from their inability to return to work because of Independent's picket line. Judgment was rendered in that suit awarding damage to Millet in the sum of $2,330.55 and in favor of Roddy in the sum of $2,420.55. 181 So.2d 285 (La.App. 1966); 206 So.2d 114 (La.App.1968). Certiorari was denied on March 25, 1968. 251 La. 1049, 208 So.2d 323.
In the meantime Independent, a nonprofit corporation organized under Louisiana law, entered into an affiliation with Oil, Chemical and Atomic Workers International Union, AFL-CIO. As a result of this affiliation on March 1, 1964 Independent's name became Oil, Chemical and Atomic Workers Union of Louisiana, affiliated with the Oil, Chemical and Atomic Workers International Union, AFL-CIO. Notwithstanding this affiliation and the change of its name, Independent's officers remained identical and continued to function in the same capacity. Membership in Independent also remained the same. All property movable and immovable owned by Independent prior to March 1, 1964 continued to be owned by Independent under its new name and affiliation. Its purposes also remained unchanged, its officers and stewards continuing to administer Independent's contract with Shell.
Then on June 26, 1964 Independent, as affiliated, requested and was granted a charter for a local union from the Oil, Chemical and Atomic Workers International Union, AFL-CIO. The charter, issued on July 8, 1964, designated Independent as Oil, Chemical and Atomic Workers International Union, Local No. 4-750, organized as a nonprofit corporation under Louisiana law. The officers of the affiliated Independent union, when the charter was issued, became officers in Local No. 4-750, and the membership of Independent became the membership of the local.
When Shell received notice of the change in name it refused to recognize Local No. 4-750; whereupon, Local No. 4-750 notified Shell of the termination of the existing agreement and informed Shell of its desire *959 to negotiate new terms and conditions of employment. Shell refused to accept this notice as a termination of the agreement.
Because of Shell's refusal, Local No. 4-750 petitioned the National Labor Relations Board requesting that an election be held. The election was held, and on August 13, 1964 a certification was issued to Local No. 4-750 as exclusive bargaining representative of certain employees of Shell. By an act of donation dated August 20, 1964, and other transactions, all property of Independent became the property of Local No. 4-750, including the union hall and bank accounts.
Subsequently Shell and Local 4-750 entered into negotiations leading to a contract which became effective in December 1964. The old contract between Shell and Independent was used as a basis for the new and, except in a few instances, the new contract was exactly like the old.
On June 28, 1965 Local 4-750 filed suit in the Federal District Court for the Eastern District of Louisiana to compel Shell to arbitrate certain grievances with Local 4-750 as a "successor" to Independent under Independent's collective bargaining agreement with Shell. As a result, judgment was rendered requiring Shell to arbitrate with Local No. 4-750 as a "successor" to Independent under its collective bargaining agreement.
On April 1, 1975 plaintiffs instituted suit against Local 4-750 seeking judgment in their favor for the amounts awarded them in their suit against Independent, including legal interest from March 4, 1963 until paid, and for all costs.
The petition alleged the facts already set forth: that Independent's affiliation and subsequent transfer of its assets, officers and membership to Local No. 4-750 resulting from the agreement of March 1, 1964 did not change the legal entity of Independent, the only change being in name. Inasmuch as Local No. 4-750 was the same entity as Independent, Local No. 4-750 is liable for the judgment in favor of plaintiff obtained against Independent.
Plaintiff's motion for summary judgment against Local 4-750 was granted on July 7, 1975, but that judgment was reversed by the Fourth Circuit, and the case was remanded for the trial of genuine issues of material fact. 332 So.2d 576. On remand there was judgment declaring Local 4-750 liable for satisfaction of the judgments in favor of plaintiffs against Independent, with interest from March 4, 1963 and costs. On appeal to the Fourth Circuit the judgment of the trial court was reversed and plaintiffs' suit was dismissed at their cost. 351 So.2d 219. Certiorari was granted on plaintiff's application. 353 So.2d 1038.
By the donation of August 20, 1964 Independent declared that Local No. 4-750 was the "successor" to Independent and that Independent was empowered by its membership and board to place all its immovable property in the name of Local No. 4-750. Accordingly the property valued at $40,000 was donated to Local No. 4-750.
In the suit in federal court to be recognized as the successor to Independent, Local No. 4-750 sought and was recognized as such and Shell was required to arbitrate with Local No. 4-750 the grievances which arose under collective bargaining contracts between Shell and Independent. This suit also contained an affidavit setting forth Local 4-750's position that it was the successor of Independent and had absorbed its property, membership, officers, its purposes and bargaining rights with Shell.
In deciding whether Local No. 4-750 is liable to plaintiffs for the judgment plaintiffs obtained against Independent it is first necessary to determine the effect of the transactions between Independent and Local No. 4-750. Four general groups of transactions bring about identity of corporations. They have been recognized in Wolff v. Shreveport Gas, Electric Light & Power Co., 138 La. 743, 70 So. 789 (1916):
"The first of such groups comprehends consolidations proper, where all the constituent companies cease to exist and a new one comes into being; the second, cases of merger proper, in which one of the corporate parties ceases to exist while *960 the other continues. The third group comprehends cases where a new corporation is, either in law or in point of fact, the reincarnation of an old one. To the fourth group belong those transactions whereby a corporation, although continuing to exist de jure, is in fact merged in another, which, by acquiring its assets and business, has left of the other only its corporate shell." (As quoted from Atlantic & B. R. Co. v. Johnson, 127 Ga. 392, 56 S.E.2d 482).
While the record in the case before us does not clearly chronicle the activities or status of Independent since the organization of Local No. 4-750, the facts indicate that Independent, having disposed of its property, movable and immovable, and whose directors and members are now organized under the Local No. 4-750 charter, has only its corporate shell remaining.
In this case the circumstances attending the creation of Local No. 4-750, and its succession to the property, directors, membership, purposes and bargaining rights of Independent are of such a character as to warrant a finding that Local No. 4-750 is merely a continuation of Independent.
This result follows from the fact that courts are agreed that there can be no consolidation of corporations, and no merger of one into another except by legislative authority and in a manner prescribed by that authority. See e. g. La.Rev.Stat. 12:111-115. Also La.Rev.Stat. 12:242-248. By well-established authority properties of a corporation constitute a trust fund for the payment of its debts. Thus, where the corporation has been divested thereof by consolidation, merger, reorganization, or "reincarnation", not only may the funds be followed by the aid of equity for the benefit of creditors, but the creditor may recover in an action of law against the corporation which has taken over the assets of the debtor corporation.
When one corporation has literally absorbed another, as Local No. 4-750 has in effect taken over Independent, which donated all its assets to Local No. 4-750, and when the "new" corporation has absorbed the membership of the old, adopted its purposes and is ruled by the same officers and directors, the transactions in no manner affect the rights of the creditors of the "old" corporation. Creditors may nevertheless proceed for the recovery of the amount due them against either corporation, or both. This results whether the claim be founded in contract or tort, since the real debtor, though represented by two corporations instead of one, remains the same in contemplation of law. Wolff v. Shreveport Gas, Electric Light & Power Co., supra, and the cases cited there. See also Heard v. Monroe Sand and Gravel Co., 9 La.App. 568, 121 So.2d 642 (La.App.1928).
The facts outlined in the foregoing statement of the case disclose a series of transactions which on their face operate to the prejudice of plaintiffs as creditors of Independent. While we discern no evidence of fraud by the members or officers of Independent or Local No. 4-750, who are the same, no satisfactory explanation has been forthcoming which would permit these transactions to place Independent's assets beyond the reach of its legitimate creditors. Under these circumstances, therefore, Local No. 4-750 is liable to plaintiffs for the satisfaction of their judgment against Independent.
Local No. 4-750 contends that, in the event it is cast in judgment, interest should not be awarded from March 4, 1963, the date of judicial demand in plaintiff's suit against Independent. Instead, it is asserted, interest should run only from the date and at the rate allowed when this suit against Local No. 4-750 was instituted that is, April 1, 1975 at seven percent. The contention is without merit. The suit filed against Local No. 4-750 was to enforce a judgment obtained in a tort suit instituted on March 4, 1963. The judgment obtained in that suit carried legal interest from date of judicial demand. At that time legal interest was five percent. Therefore, plaintiffs are entitled to have enforced the judgment awarded in that suit together with interest and costs incident thereto. Benefits *961 of the 1963 judgment are not modified because of its delayed enforcement.
For the reasons assigned judgment of the Court of Appeal is reversed. Judgment is rendered in favor of Etienne P. Millet for $2,330.55 and in favor of Earl J. Roddy for $2,420.55, with legal interest at the rate of five percent on each amount from March 4, 1963, until paid, and for all costs of court incurred in the action entitled Earl J. Roddy and Etienne P. Millet vs. Independent Oil and Chemical Workers Union of Louisiana, No. 7637 on the Docket of the Twenty-Ninth Judicial District Court, Parish of St. Charles; together with all costs of these proceedings.
NOTES
[*] Tate, J., would grant a rehearing.